**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| RONALD VENDETTI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> COMPASS ENVIRONMENTAL, INC., ) <br> ) <br> Defendant. ) | Case No. 06 C 3556 <br><br> Judge Marvin E. Aspen |

**MEMORANDUM ORDER AND OPINION**

On November 26, 2007, we granted Ronald Vendetti's ("Vendetti") motion for summary judgment and awarded him twelve months severance pay pursuant to his employment contract ("Agreement"), prejudgment interest, and attorneys' fees. On January 24, 2008, we granted Compass Environmental, Inc.'s ("Defendant") motion for reconsideration allowing the parties to specifically brief whether Vendetti is entitled to attorneys' fees under the Illinois Attorneys' Fees in Wages Actions Act, 705 Ill. Comp. Stat. 225/1 (2007) ("Fee Act").[1] For the reasons set forth below, we reaffirm our November 26, 2007 ruling and find that Vendetti is entitled to attorneys' fees under the Fee Act.

**ANALYSIS**

Defendant presents three arguments against awarding attorneys' fees in this case: (1) the Fee Act should not apply in federal diversity cases; (2) Vendetti is not an "employee" covered by the Fee Act; and (3) the severance awarded here does not qualify as "wages earned" under the

---

[1] We will assume familiarity with our earlier opinion, and will restate the facts only necessary to examine the issues below.

1

Fee Act. We address each of these arguments below.

## A. Choice of Law

In diversity cases, we must apply federal procedural law and Illinois substantive law. *Van Diest Supply Co. v. Shelby Cty State Bank*, 425 F.3d 437, 439 (7th Cir. 2005) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938)). While "there is no clear criterion for deciding whether a particular state rule is 'substantive,'" the Seventh Circuit has recognized "two classes of pretty clear cases." *S.A. Healy Co. v. Milwaukee Metro. Sewerage Dist.*, 60 F.3d 305, 310 (7th Cir. 1995). First, if the state and federal rules are in "actual conflict," then we apply the federal rule under the Supremacy Clause. *Id.* Second, if "the state procedural rule, though undeniably 'procedural' in the ordinary sense of the term, is limited to a particular substantive area, such as contract law," then we will apply state law. *Id.* As explained below, the second situation applies here.

*1. No Direct Conflict*

First, the Fee Act[2] is not in direct conflict with Federal Rule 54(d) or 28 U.S.C. § 1920. An actual conflict exists where "enforcing the state rule would knock out the federal rule." *S.A. Healy Co.*, 60 F.3d at 310. Rule 54(d)(1) permits a "prevailing party" to recover its "costs other than attorneys' fees." Fed. R. Civ. P. 54(d)(1). Rule 54(d)(2) then specifically addresses

---

[2] The Fee Act states:
"Whenever . . . [an] employee brings an action for wages earned and due and owing according to the terms of the employment, and establishes by the decision of the court or jury that the amount for which he or she has brought the action is justly due and owing, and that a demand was made in writing at least 3 days before the action was brought, for a sum not exceeding the amount so found due and owing, then the court shall allow to the plaintiff a reasonable attorney fee of not less than $10, in addition to the amount found due and owing for wages, to be taxed as costs of the action."
705 ILCS 225/1.

attorneys' fees and states that they are permissible if provided for in a judgment, statute, or rule. Fed. R. Civ. P. 54(d)(2). Here, the Fee Act constitutes just such a statute because it permits an employee, after making a proper demand upon his employer, to recover "a reasonable attorney fee." 705 ILCS 225/1. Thus, the Fee Act does not conflict with either provision of Rule 54(d) because it fits within the Rule 54(d)(2) statutory exception.

The Fee Act also does not conflict with 28 U.S.C. § 1920. Section 1920 lists the costs that are recoverable under Rule 54(d)(1).[3] If a cost is not listed in 28 U.S.C. § 1920, then there is no conflict if a state rule provides for reimbursement of that cost. *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1233-34 (3d Cir. 1995) ("There is . . . no federal statute or rule providing the rule of decision when a federal court is asked to award litigation expenses other than those enumerated at section 1920 costs."). The federal statute does not prohibit recovery for other costs. Therefore, Defendant's argument that there is a conflict because attorneys' fees are not listed in 28 U.S.C. § 1920 is unconvincing.

Defendant argues, however, that there is an actual conflict because the Fee Act provides that attorneys' fees should "be taxed as costs of the action." 705 ILCS 225/1. Defendant claims that the Fee Act's characterization of attorney's fees as "costs of the action," conflicts with the fact that attorneys' fees are not included as "costs" in Rule 54(d)(1) or in 28 U.S.C. § 1920. We

---

[3] The statute lists the following items that can be taxed as costs:
(1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.
28 U.S.C. § 1920.

disagree. The Fee Act's characterization of attorney's fees as "costs" does not conflict with the wording of Rule 54(d).[4] In fact, Rule 54(d)(1) actually characterizes attorneys' fees as a type of "costs" by stating that it applies to "costs other than attorney's fees."[5] In addition, the Advisory Committee Notes to the 1993 Amendments of Rule 54(d)(2) indicate that it provides the procedure for "presenting claims for attorneys' fees, whether or not denominated as 'costs'" in the applicable statute. Fed. R. Civ. P. 54(d)(2) note. This note clarifies that even if a statute characterizes attorneys' fees as "costs," the applicability of Rule 54(d)(2) is not limited by this characterization. Thus, the Fee Act's characterization of attorneys' fees as "costs" under the Fee Act does not conflict with the federal rule.[6]

In addition, Defendant's reliance upon the Seventh Circuit's nonprecedential disposition in *Hockett* is unconvincing because, unlike in that case, the rules here are not in conflict. The issue in *Hockett* was whether attorneys' fees were recoverable as part of the "costs and damages" caused by a wrongfully-entered injunction. *Minn. Power & Light Co. v. Hockett*, 14 Fed. App'x

---

[4] In addition, we note that even if Plaintiff is correct that the Fee Act is more analogous to Rule 68 as an offer of judgment, the provisions do not conflict as one involves an offer by a plaintiff and the other an offer by a defendant. *See S.A. Healy Co.*, 60 F.3d at 311-12.

[5] Indeed, many other statutes that award attorneys' fees characterize the fees as part of the costs. *See, e.g.,* 42 U.S.C. § 1988 (allowing a the "prevailing party, other than the United States, a reasonable attorney's fee ***as part of the costs***." (emphasis added)).

[6] Defendant also argues that *Mundadi v. Nikken Inc.* demonstrates that there is a conflict between the Fee Act and federal law. No. 91 C 7425, 1993 U.S. Dist. LEXIS 2438 (N.D. Ill. Mar. 1, 1993). In *Mundadi*, the prevailing party sought reimbursement for service of summons and subpoena costs, court reporter fees, witness fees, and exemplification and copying fees. *Mundadi*, No. 91 C 7425, 1993 U.S. Dist. LEXIS 2438, at *15. The court held that even though Illinois law does not provide for the recovery of costs generally, these costs were reimbursable because Rule 54(d) governs costs in diversity cases. *Id.* at *5-6. *Mundadi* is distinguishable from the instant case, however, because it did not involve attorneys' fees. Thus, *Mundadi*'s scope is limited to whether a state law against reimbursing costs conflicts with Rule 54(d), and does not apply to whether a state attorneys' fee statute conflicts with the federal rule.

4

703, 705-09 (7th Cir. 2001). While both the Indiana rule and Federal Rule 65(c) provide for the recovery of "costs and damages" in such a case, Indiana courts have interpreted "costs and damages" to include attorneys' fees, whereas federal courts have held that "costs and damages" do not include attorneys' fees. *Id.* at 708. Thus, the Seventh Circuit held that these two rules conflicted and applied the federal rule. *Id.* Unlike the rules in *Hockett*, however, the Fee Act and Rule 54(d) are not in direct conflict. Instead, as explained above, they can be harmonized because Rule 54(d)(2) specifically permits attorneys' fees when authorized by statute, as the Fee Act does here.

*2. Procedural vs. Substantive*

Given that there is no direct conflict, our second inquiry is whether the Fee Act is a substantive or procedural provision, and we hold that it is substantive. The Supreme Court has held that in diversity cases, a "state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 259 (1975) (internal citations omitted); *see also Taco Bell Corp. v. Cont'l Cas. Co. v. Zurich Am. Ins. Co.*, 388 F.3d 1069, 1077 (7th Cir. 2004) ("Whether to shift attorneys' fees . . . falls on the substantive side of the substantive-procedural divide created by *Erie* and subsequent decisions if . . . the decision to shift or not shift is based on a substantive state policy."); *Jackman v. WMAC Inv. Corp.*, 809 F.2d 377, 383 (7th Cir. 1987) ("In diversity cases, state law governs the granting of attorney's fees."). In addition, where a state rule "is limited to a particular substantive area . . . the state's intention to influence substantive outcomes is manifest and would be defeated by allowing parties to shift their litigation into federal court unless the state's rule was applied there as well." *S.A. Healy Co.*, 60

F.3d at 310.

The Fee Act falls on the substantive side of the *Erie* divide because it reflects Illinois substantive employment policy. Courts have recognized that the Fee Act's purpose is to facilitate collection, so that "unpaid laborers [can be made] whole without their having to bear collection expenses." *Avco Delta Corp. v. United States*, 484 F.2d 692, 705 (7th Cir. 1973); *see also Affetto v. TRW, Inc.*, 691 F.2d 357, 361 (7th Cir. 1982) (describing the purpose of the Fee Act as "facilitating collection"); *Sarnoff v. Am. Home Prods. Corp.*, No. 83 C 0647, 1985 WL 1830, at *1 (N.D. Ill. June 12, 1985) ("The statute was designed to aid employees in collecting compensation to which they are entitled and to discourage employers from attempting to avoid paying their employees the agreed upon compensation."). This is a substantive goal, reflecting the fact that employees seeking unpaid wages may not have the resources to sue their employers.

In addition, the Fee Act's limited focus on one area of substantive law weighs in favor of its application in federal diversity actions. The Fee Act only applies to employees who are bringing actions "for wages earned and due and owing according to the terms of the employment." 705 ILCS 225/1. This limited application demonstrates Illinois's "intention to influence substantive outcomes" in certain employment cases even though the means may be procedural. *S.A. Healy Co.*, 60 F.3d at 310. Accordingly, we must apply the Fee Act or else Illinois's substantive goals could be easily thwarted "by allowing parties to shift their litigation into federal court." *Id.*; *see also Jackman*, 809 F.2d at 383 (applying Wisconsin's attorneys' fee provision in diversity action for employee wage claims).

Defendant argues that the statute "is a free-standing procedural provision in the 'Courts'

section of the Illinois Code and does not accompany any substantive statute." (Reply at 13). To support its position, Defendant quotes *Wilder v. Virginia Hospital Ass'n*, 496 U.S. 498, 527 (1990), where the dissent argued that the placement of the Boren Amendment in the Medicaid Act was "structural evidence" that it was not meant to create a private cause of action under 42 U.S.C. § 1983. *Id.* at 527. Not only is this selective quote from a Supreme Court dissent not directly applicable to attorneys' fees, but even if we examine the "structural evidence" in the placement of the Fee Act, we do not find that it transforms the provision from substantive to procedural. In fact, the Fee Act is surrounded by other provisions related to attorneys and attorneys' fees, such as the Building and Loan Receivership Fee Act, 705 ILCS 230/1, which governs attorneys' fees for building and loan association cases.[7] More significantly, the Fee Act is not included in the "Civil Procedure" chapter of the Code, which includes provisions regarding costs. *See* 735 ILCS 5/5 *et. seq.* Thus, the location of the Fee Act does not prove that it is meant to be procedural, rather than substantive, law.[8]

## B. "Employee" under the Fee Act

---

[7] Other provisions surrounding the Fee Act include: the Attorney Act, 705 ILCS 205, the Legal Business Solicitation Act, 705 ILCS 210, and the Corporation Practice of Law Prohibition Act, 705 ILCS 220.

[8] Defendants also argue that the location of the Fee Act in the "Court" section demonstrates that it is procedural because the Seventh Circuit has held that a matter is procedural if it "predominantly concern[s] the stricture or administration of the court." *Anderson v. Griffin*, 397 F.3d 505, 520 (7th Cir. 2005) (holding that jury instructions are "procedural" and thus applying federal law). However, the title of the Code Chapter containing the Fee Act is not dispositive of this issue. Instead, as indicated above, the Seventh Circuit has held that attorneys' fees based upon "substantive state policy" are not procedural. *Taco Bell*, 388 F.3d at 1077. *But see* 17A-124 Moore's Federal Practice - Civil § 124.07 ("However, when an award of attorney's fees is based on misconduct by a party or counsel in the litigation itself, rather than as a matter of substantive law, the matter is procedural and federal law governs." (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 53-55 (1991); *In re Larry's Apartment, L.L.C.*, 249 F.3d 832, 838 (9th Cir. 2001))).

7

Defendant next argues that Vendetti is not an "employee" covered by the Fee Act. The Fee Act applies to suits for wages brought by "a mechanic, artisan, miner, laborer, servant or employee." 705 ILCS 225/1. This provision is "in derogation of common law, and therefore must be strictly construed." *Dallis v. Don Cunningham & Associates*, 796 F. Supp. 1127, 1128 (N.D. Ill. 1992); *see also Anderson v. First Am. Group of Cos., Inc.*, 353 Ill. App. 3d 403, 412, 818 N.E.2d 743, 751 (1st Dist. 2004). Given that the Illinois appellate courts are currently in disagreement regarding the scope of the term "employee," "we must construe the statute as we believe the Illinois Supreme Court would." *Id.* (citing *Barr Co. v. Safeco Ins. Co.*, 583 F. Supp. 248, 254 (N.D. Ill. 1984)). To do this, we examine the pertinent appellate court decisions.

The main divide among the appellate courts concerns whether the term "employee" should be given an independent meaning or whether its interpretation is limited to employees of the same general type as "mechanic, artisan, miner, laborer, [and] servant." *Compare Anderson*, 353 Ill. App. 3d at 413, 818 N.E.2d at 751 ("We agree with *Reiss*'s holding that the legislative intent behind the inclusion of 'employee' in the Fee Act was to include all employees who bring actions to recover lost wages."); *Reiss v. El Bauer Chevrolet Co.*, 96 Ill. App. 2d 266, 271, 238 N.E.2d 619, 621 (4th Dist. 1968) (holding that the "obvious legislative intent" behind the 1965 amendment of the Act was to include "all employees who must sue to obtain payment of their wages and who otherwise comply with the requirements of the statute"), *with Lites v. Jackson*, 70 Ill. App. 3d 374, 376-77, 387 N.E.2d 1118, 1120 (1st Dist. 1979) (holding that "the word Employee is used in a limited and restricted sense," and only includes "all persons hired to render services of the same general nature that are due from a Mechanic, artisan, miner, laborer or Servant").

This divide originates from the 1965 amendment, which changed the wording of the Fee Act from "mechanic, artisan, miner, laborer, *or servant, or employee*" to "mechanic, artisan, miner, laborer, *servant or employee.*"  Laws 1965, p. 3325, § 1, eff. Aug. 24, 1965 (emphasis added).  Before this amendment, Illinois courts mostly adopted the more limited interpretation of "employee."  However, when the Fee Act was amended in 1965, some Illinois courts began to give the term "employee" an independent, broader meaning.  *See Reiss*, 96 Ill. App. 2d at 271.

To determine the effect of this amendment we must first examine the "plain and ordinary meaning of the statutory language."  *Reda v. Advocate Health Care*, 199 Ill. 2d 47, 55, 765 N.E.2d 1002, 1007 (Ill. 2002).  If the language is "clear and unambiguous, we must apply it as written."  *Id.*  The court may only "look beyond the language to consider the purposes of the statute" if the language is ambiguous.  *Id.*

Examining the language of the statute, we find that it is unambiguous, especially in light of the 1965 amendment.  Before the amendment, the inclusion of two "ors" in the statute created an ambiguity, since it was possible that employee was modifying or somehow analogous to "servant."  *See id.*  However, by deleting the first "or" before "servant," the statute now includes "employee" as an independent term, not as a potential modifier of servant, and thus we hold that "employee" should be interpreted according to its plain meaning.  Thus, we agree with the *Reiss* and *Anderson* courts and believe that the Illinois Supreme Court would adopt this more modern approach to find that the amendment clarified the scope of the Fee Act to include all "employees."  *See also Shields v. Associated Volume Buyers, Inc.*, No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, at *6 (N.D. Ill. Mar. 30, 1994) ("[T]he trend among the courts has been to expand the definition of employee under the Fee Act."); *Sarnoff*, No. 83 C 0647, 1985 WL

9

1830, at *3 ("In predicting how the Illinois Supreme Court would interpret [the Fee Act], *Reiss* is a more accurate indicator than *Lites* and *Koop and Assoc.*").

Defendant, however, argues that the amendment had no effect because "employee" is still a general term encompassing all the preceding terms, and thus we must apply the canon of statutory construction *ejusdem generis*. Defendant relies on the *Lites* decision, which applied this doctrine to the Fee Act and held that the word "employee" must "include all persons hired to render services of the same general nature that are due from a Mechanic, artisan, miner, laborer or Servant." 70 Ill. App. 3d at 376-77, 387 N.E.2d at 1120. Nonetheless, we disagree with the reasoning in *Lites*.[9] First, we find that the statute is unambiguous and thus does not require reference to canons of statutory construction. *See City of Chi. v. Bethlehem Health Temple Church*, 93 Ill. App. 2d 303, 309, 236 N.E.2d 357, 360 (1st Dist. 1968). Second, assuming arguendo, that the Fee Act is ambiguous, *ejusdem generis* does not apply because it is only applied when a statute "specifically describes several classes of persons or things and then includes 'other persons or things,' so that the word 'other is interpreted as meaning 'other such like.' *Quality Saw & Seal, Inc. v. Ill. Commerce Comm'n*, 374 Ill. App. 3d 776, 782-83, 871 N.E.2d 260, 266 (2d Dist. 2007). The Fee Act does not include the term "other" or similar terms. While mechanics, artisans, laborers, and servants may work for other entities or

---

[9] Other courts have distinguished the *Lites* decision and limited it to its holding that village officials do not qualify as "employees." *See Sarnoff*, No. 83 C 0647, 1985 WL 1830, at *3 (explaining that "the actual holding [of *Lites*] was based on the distinction between an employee and an elected official"); *Johnson v. Figgie Int'l Inc.*, 151 Ill. App. 3d 496, 508, 502 N.E.2d 797, 805 (2d Dist. 1986) (noting that the *Lites* court's central holding was just that the plaintiff was more like an elected official than an "employee"); *see also Howard A. Koop & Associates v. KPK Corp.*, 119 Ill. App. 3d 391, 457 N.E.2d 66 (2d Dist. 1983) (distinguishing *Lites* as applying to cases involving public officials and also holding that independent contractors are not "employees").

individuals and thus be "employees," this is not necessarily the case. Therefore, "employee" is not an obviously general term meant to encompass all of the other occupations listed.[10]

Given the conclusion that "employee" is an independent term, we apply its "'ordinary and popularly understood meaning[].'" *Johnson*, 151 Ill. App. 3d at 309 (quoting *Niven v. Siquiera*, 109 Ill. 2d 357, 366, 487 N.E.2d 937, 942 (1985)). In determining whether someone qualifies as an "employee," Illinois courts have emphasized the degree of the employer's "right to control the manner and method in which the work is to be carried out." *Landers-Scelfo v. Corporate Office Sys., Inc.*, 356 Ill. App. 3d 1060, 1071, 827 N.E.2d 1051, 1062 (2d Dist. 2005) (holding that the Fee Act is limited to "common-law" employees). Other secondary factors include "how much skill is involved in the work, how the worker is paid, . . . whether the employer has the right to discharge the worker, and whether it furnishes the tools the worker uses." *Id.*; *see also Shields*, No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, at *6 (the Fee Act does not apply to "a high-level officer or executive who has the power and right to control and direct his or her own work"); *Shramuk v. Snyder*, 278 Ill. App. 3d 745, 750, 663 N.E.2d 468, 472 (2d Dist. 1996) (applying the Fee Act to associate attorney because "he worked for wages").[11]

---

[10] We note that a federal court in our district adopted the opposite approach in *Kruse v. Aamed, Inc.*, No. 96 C 5344, 1997 U.S. Dist. LEXIS 2530, at *20 (N.D. Ill. Feb. 27, 1997). There the court held that the statute was limited to occupations "of the same degree, kind and nature that are due from a mechanic, artisan, laborer or servant." *Id.* (internal citations omitted). However, not only have other courts in our district adopted our broader interpretation of the Fee Act, *see Shields*, No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, at *6; *Sarnoff*, No. 83 C 0647, 1985 WL 1830, at *3, but the plaintiff's services in *Kruse* appeared to be more like those of an independent contractor than an employee. *Id.* (stating that Kruse's services were more "akin to those of a consultant, lending his business expertise to the new owner of the company."). Accordingly, *Kruse* is distinguishable and unpersuasive.

[11] Relying on *Shields*, Defendant emphasizes the distinction between "executives" and "employees." (Reply at 4). However, the *Shields* court did not actually draw such a bright-line, but emphasized the degree of control in a given employment arrangement. *Shields,* No. 93 C

Applying this analysis, we find as a matter of law that Vendetti was an "employee" within the scope of the Fee Act. As a controller for Compass, Vendetti's tasks included handling accounting matters such as monthly statements, installing accounting software, and training new employees. While we held that Vendetti had the power to refuse travel requests under his employment contract, this limited holding does not mean that he had the amount of control over his work necessary to exclude him from the scope of the Fee Act.[12] In fact, not only did his employment contract provide that the Board of Directors was to supervise him, but also the undisputed facts indicate that Vendetti reported to the CFO (Pl. Resp. to Def. Facts ¶¶ 14, 21; Def. Facts ¶ 22), who assigned Vendetti many of his tasks, such as integrating accounting systems and performing monthly closings (Pl. Facts ¶¶ 20-22).[13] Indeed, there is nothing in the record to indicate that Defendant lacked the authority to fully control Vendetti in the Stone Mountain office. Thus, Vendetti did not exert the degree of control necessary to exclude him from the scope of the Fee Act.

### C. "Wages" under the Fee Act

---

7620, 1994 U.S. Dist. LEXIS 3944, at *6 ("[T]he appellate courts apparently concur that a high-level officer or executive who has the power and right to control and direct his or her own work."). Thus, to determine whether someone is an "employee," we cannot merely rely upon whether he has an "executive" title, but we must examine the facts of his work situation.

[12] Defendant argues that "Plaintiff has proffered no evidence that he lacked the right to control his own work" and that Plaintiff has actually argued that "he was accountable to no one at Compass other than the Board of Directors." (Mem. at 7). This argument is unavailing because the facts demonstrate that Vendetti was subject to executive control for other non-travel aspects of his work.

[13] Defendant contends that Vendetti is estopped from arguing that he was an "employee" due to his previous arguments that he was only subject to the control of the Board of Directors under his Agreement. However, regardless of what his Agreement stated, he did report to, and accept assignments from, Compass personnel other than the Board. Therefore, as a practical matter, he was subject to other's supervision in the Stone Mountain office.

The next issue is whether the severance payments under section 6(b) of Vendetti's Employment Agreement[14] qualify as "wages" under the Fee Act. Defendant urges us to interpret "wages" in the Fee Act as covering only severance payments that accrue based upon length of service, while Vendetti argues that "wages" covers all forms of compensation owed pursuant to an employment agreement.

The term "wages" is not defined in the Fee Act, and therefore to determine its meaning, we must first examine the "plain and ordinary meaning of the statutory language." *Reda*, 199 Ill. 2d at 55. However, since the term "wages" can be susceptible to broad or narrow constructions, the "'purpose, object and spirit of the statute must serve as the primary guide to its interpretation.'" *Affetto*, 691 F.2d at 359 (quoting *Swartwout v. City of New York*, 369 N.Y.S.2d 865, 48 A.D.2d 341 (1975)).

The Fee Act is designed to ensure that employers will not use their superior bargaining position to avoid paying employees, and thus, Illinois courts and the Seventh Circuit have found that "wages" under the Fee Act is to be interpreted broadly. *Id.* at 360 (citing *Reiss*, 96 Ill. App. 2d at 271). Turning to the dictionary definition of "wages," as the Seventh Circuit did in *Affetto*, we find that a broad definition of "wages," can "include[] not only periodic monetary earnings but ***all compensation*** for services rendered without regard to manner in which such compensation is computed." Black Law's Dictionary (6th ed.) (emphasis added). Indeed,

---

[14] Section 6(b) of the Agreement states:
[I]n the event [Vendetti] terminates this Agreement following the [Defendant's] request to move his place of employment more than 45 miles from the Principal Location, the [Defendant] shall pay to [Vendetti] severance pay equal to [Vendetti's] then existing Base Salary payable at such times and in such manner (including subject to all required deductions) for the 12-month period following the date of termination.
(Compl. Ex. A).

Illinois courts have specifically stated that "[t]he method of payment is not controlling in determining whether a sum is wages." *Reiss*, 96 Ill. App. 2d at 271.

Applying these principles, we hold that the twelve-month severance payment in Vendetti's Agreement qualifies as "wages earned and due and owing according to the terms of the employment" under the Fee Act. 705 IlCS 225/1. While not accrued on a periodic basis, the severance provision was a part of Vendetti's "wages" because, even though only awarded if the conditions of Section 6(b) occurred, it was included as part of the parties' Agreement in return for Vendetti's employment term. Once these conditions occurred, Vendetti "earned" the severance as compensation. Accordingly, this form of compensation qualifies as "wages." *See also Anderson*, 353 Ill. App. 3d at 413-14 (awarding fees under similar severance provision and also holding that reimbursement for relocation expenses qualify as "wages" under the Fee Act).

Including this type of payment within the definition of "wages" would also further the purpose of the Fee Act. Prior to this lawsuit, Vendetti sent Defendant a letter demanding payment under the Agreement. When Defendant refused, Vendetti sued to collect the remaining twelve months of severance owed pursuant to the Agreement. The Fee Act is designed to facilitate just this type of collection. *Affetto*, 691 F.2d at 362. Indeed, if this type of payment is not covered by the Fee Act, employees like Vendetti may not bring their suits in the first place, thus allowing an employer to use a superior bargaining position to thwart collection of previously agreed upon compensation.

Defendant's main argument against this interpretation is that there are two types of severance payments, those based on performance and those more akin to liquidated damages. Defendant argues that the latter does not qualify as "wages" under the Fee Act because it is not

for work actually performed and thus not been "earned."[15] Contrary to this position, there is nothing in the Fee Act limiting the definition of "wages" to include only compensation for work actually performed. *Shields*, No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, at *5-6 (finding that limiting wages to work actually performed does not appear in statute and is "inconsistent with the legislative intent of the Act"); *see also Anderson*, 353 Ill. App. 3d at 413-14. Instead, compensation can be earned based upon criteria other than length of performance, such as where a contract provides for bonuses or reimbursement for expenses and other unforeseen contingencies. *See id.* Indeed, even severance payments triggered upon termination can be included as a form of compensation, and not merely as damages to punish the employer, as

---

[15] For this distinction, Defendant primarily relies on a line of Illinois cases describing when severance payments vest under employment contracts. For example, Defendant relies on *Kulins v. Malco*, 121 Ill. App. 3d 520, 526, 459 N.E.2d 1038, 1044 (1st Dist. 1984), where the issue was whether severance payments, which accrued based upon each year of completed service, survived the modification or termination of the employment contract. The court explained that severance based upon length of service, or "contingent upon a condition precedent," is a form of vested deferred compensation such that it "survive[s] the termination or modification of that policy." *Id.* at 526-27. While the court distinguished this type of severance from the kind "contingent upon the condition subsequent of termination within the terms of the policy," this distinction does not change the result in the present case. *Id.* at 527; *see also Lanigan v. Resolution Trust Corp*, No. 91 C 7216, 1993 WL 792085 (N.D. Ill. Mar. 31, 1993) (comparing similar severance provision to liquidated damages and holding that such provisions do not vest and therefore do not survive a 12 C.F.R. § 563.39 default termination). Here, regardless of whether Vendetti's severance provision was subject to modification during the term of his employment, upon the satisfaction of the conditions Section 6(b) of his Agreement, he became entitled to the twelve-month severance payment.

In addition, Defendant cites to a Seventh Circuit case which labeled a similar severance provision as liquidated damages. *Gerow v. Rohn & Haas Co.*, 308 F.3d 721, 724-25 (7th Cir. 2002). That case, however, involved an executive who left a company but was attempting to recover both severance benefits and compensation he would have received had he remained employed. *Id.* at 722. When describing one of the contractual provisions at issue that provided for severance payments upon leaving the company, the Seventh Circuit called it a "liquidated-damages provision in the form of severance pay." *Id.* at 724. While this dicta may support Defendant's contention that severance payments may be meant as a form of damages, it is not relevant to determining whether such provisions can also constitute "wages" under the Fee Act.

evidenced by one Illinois appellate court's description of severance payments as "'a means of recompense [to provide] for the economic exigencies and privations and detriments [that] result from the permanent separation of the employee from the services for no fault of his own.'" *Metro. Distribs., Inc. v. Ill. Dep't of Labor*, 114 Ill. App. 3d 1090, 1094, 449 N.E.2d 1000, 1004 (1st Dist. 1983) (quoting *Owens v. Press Publ'g Co.*, 209 N.J. 537, 120 A.2d 442 (1956)). Thus, even if we accept Defendant's argument regarding the two types of severance payments, we hold that Vendetti's severance payments awarded under the Agreement though not based upon length of service fit within the broad definition of "wages" under the Fee Act.

Defendant also relies upon the line of cases that have held that damages for wrongful discharge are not covered by the Fee Act. *See Bill v. Bd. of Educ.*, 351 Ill. App. 3d 47, 65-66, 912 N.E.2d 604, 619 (1st Dist. 2004); *Scoby v. Civil Serv. Comm'n*, 253 Ill. App. 3d 416, 418-19, 624 N.E.2d 439, 441 (5th Dist. 1993); *Thaxton v. Walton*, 122 Ill. App. 3d 266, 271, 461 N.E.2d 476, 479 (4th Dist. 1983). Defendant describes the severance payments at issue here as liquidated damages, and then argues that they are more akin to damages for wrongful discharge, and not "wages" for work actually performed. (Mem. at 11-12). However, the payments at issue here are distinguishable from the above cases because Vendetti is not seeking damages for wrongful discharge or back pay, but instead he is seeking compensation accrued and due under the Agreement.

Finally, Defendant cites other state cases holding that when severance is not based upon length of service, it is not "wages." These cases are distinguishable because not only do they not involve the Illinois Fee Act, but the other statutes at issue contain definitions of "wages" unlike the undefined broad scope of "wages" under the Fee Act. *See e.g., Jackson v. Arvinmeritor*, 07-

16

cv-0439-DFW-WTL, 2008 WL 64528, at *4-6 (S.D. Ind. Jan. 3, 2008) (interpreting Indiana statute that includes definition of "wages"); *Stevenson v. Branch Banking & Trust Corp.*, 861 A.2d 735, 750 n.9 (Md. Ct. Spec. App. 2004) (holding similar severance payments not compensable because Maryland Act limited recovery to "all wages due for work performed before the termination of employment"); *Smith v. Am. Gen. Corp.*, No. 87-79-II, 1987 Tenn. App. LEXIS 2851, at *35 (Tenn. Ct. App. Aug. 5, 1987) (comparing severance payment in contract to liquidated damages provision, but denying attorneys' fees under ERISA because would not further purpose of the attorney fee provision because plaintiff obtained substantial recovery to cover his attorneys' fees under other contract provisions); *Wis. Dep't of Indus., Labor & Human Relations v. Coatings, Inc.*, 126 Wis. 2d 338, 344-45, 376 N.W.2d 834, 837 (Wis. 1985) (limiting recovery under definition of "wages" in Wisconsin statute to wages for "personal services").

Defendant has not offered us any Illinois case denying severance payments under the Fee Act based upon its arguments. On the contrary, Illinois courts appear to have repeatedly awarded attorneys' fees under the Fee Act based upon claims for severance, such as the *Anderson* case, which awarded fees based upon a similar-type of severance provision to the one at issue here.[16]  *See* 353 Ill. App. 3d at 413-14. Given that we must interpret "wages" broadly to further the purposes of the Fee Act, we find that the severance payments pursuant to Vendetti's Agreement constitute "wages" under the Fee Act.

---

[16] While Defendant argues that *Anderson* is wrongly decided because it relied upon the definition of "wages" under the Illinois Wages Collection and Payment Act ("IWCPA"), we do not agree. Although the IWCPA does specifically define "wages" unlike the Fee Act, the two statutes have similar purposes and thus other courts have compared their provisions when interpreting the Fee Act. *See e.g.*, *Shields*, No. 93 C 7620, 1994 U.S. Dist. LEXIS 3944, at *5-6.

**CONCLUSION**

For the reasons set forth above, we find that Vendetti is entitled to attorneys' fees under the Fee Act. We retain jurisdiction solely as to the amount of attorneys' fees, and refer the parties to Magistrate Judge Keys in the event that they are unable to resolve this issue mutually.[17]

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Date: April16, 2008

---

[17] While we acknowledge that the parties filed a "Joint Suggestion of Resolution on Damages Amounts" indicating that they had agreed to $130,000.000 in attorneys' fees. This stipulation was filed on January 22, 2008, prior to the briefing of the attorneys' fees issue.